UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REABA DANIELLE FRANKLIN o.b.o.
S.J., a minor child,

        Plaintiff,                     Civil Action No. 12-cv-10727

     v.                              District Judge Paul D. Borman
                                      Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO
DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10] AND
TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13]**

Plaintiff Reaba Franklin's minor daughter, SNJ, has type 1 diabetes. Plaintiff, believing that SNJ's condition rendered her disabled as that term is used in the Social Security Act, filed a supplemental security income application for SNJ. The Commissioner of Social Security denied her application. Plaintiff has appealed that decision to this Court. The parties have each moved for summary judgment (Dkts. 10, 13), and those motions are now before the Court for a report and recommendation (Dkt. 3). For the reasons set forth below, this Court finds that the ALJ adequately explained his assessment of Plaintiff's credibility and that Plaintiff has not otherwise demonstrated reversible error. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 10) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 13) be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

**I. BACKGROUND**

Just after SNJ turned seven years old, she was diagnosed with diabetes mellitus type 1. (*See* Tr. 95, 188.) A person with type 1 diabetes does not produce insulin, "a hormone that is needed to convert sugar, starches and other food into energy needed for daily life." American Diabetes Assoc., *Diabetes Basics*, http://www.diabetes.org/diabetes-basics/type-1/ (last visited Jan. 16, 2013). Plaintiff says that SNJ's type 1 diabetes causes seizures and fatigue and renders SNJ disabled within the meaning of the Social Security Act. (Tr. 37, 43.)

**A. Procedural History**

On June 25, 2008, Plaintiff, on behalf of SNJ, applied for supplemental security income ("SSI") asserting that her daughter became disabled on June 1, 2008. (Tr. 17.) The Commissioner of Social Security ("Commissioner") initially denied the disability application on September 12, 2008. (*Id.*) Plaintiff then requested an administrative hearing, and on June 3, 2010, Plaintiff and SNJ appeared with counsel before Administrative Law Judge Daniel G. Berk. (*See* Tr. 17-30, 33-53.) In a July 22, 2010 decision, ALJ Berk found that SNJ was not disabled. (*See* Tr. 17-30.) His decision became the final decision of the Commissioner on July 18, 2011 when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Tr. 3, 7.) It appears, however, that the Appeals Council first informed Plaintiff of its denial in a letter dated January 6, 2012. (*See* Tr. 3, Compl. ¶¶ 2-9.) The letter informed Plaintiff that she had 30 days from its receipt to appeal to federal court. (*Id.*) Plaintiff maintains that she received the letter on February 7, 2012. (Compl. ¶ 8.) Plaintiff filed this suit on February 17, 2012. (Dkt. 1, Compl.)

**B. Summary of the Administrative Record**

Sometime during the 2007-2008 school year, Plaintiff noticed that SNJ, then six years old, was suffering from incontinence. (Tr. 172.) By the end of the school year, SNJ was tired and exhausted and could not keep up with other children. (*Id.*) SNJ's teacher reported that SNJ was having anger problems. (*Id.*)

Not long after the school-year ended, in June 2008, SNJ was hospitalized for three days. (Tr. 165-71, 101.) She had been experiencing fatigue, sore throat, nocturia (waking at night because of the need to urinate), bed wetting, and decreased eating and drinking. (Tr. 165-66.) SNJ's mother also reported erythema (redness or rash) around SNJ's eyes which had progressed to SNJ's abdomen. (Tr. 166.) The attending physician diagnosed SNJ with new-onset diabetes. Plaintiff and her daughter were given instruction on diabetes and nutrition, and SNJ was placed on insulin. (Tr. 166.)

In July 2008, in connection with SNJ's SSI application, Plaintiff completed a daily activity report. (Tr. 115-18.) Plaintiff reported that SNJ was required to take insulin before every meal and check her glucose at least five times per day. (Tr. 115.) She said that SNJ liked to draw and carried a drawing pad and pencils with her most of the time. (*Id.*) She explained, "[my daughter] can do all of her favorite activities[;] although she does tire very quickly." (*Id.*) She noted that SNJ had friends at a daycare center, but was not seeing them because the center was not trained in assisting diabetic children. (*Id.*) In terms of chores, Plaintiff reported that SNJ vacuumed, cleaned doorknobs with disinfectant, and put toys away. (Tr. 116.) Plaintiff said that she never had to repeat her instructions to SNJ and that SNJ did not typically require supervision to complete her chores. (*Id.*) Plaintiff also noted that SNJ was able to make simple meals and write letters on a daily basis. (Tr.

117.) Plaintiff described SNJ as shy around strangers but very friendly around family members and familiar neighbors. (Tr. 115.)

In August 2008, Dr. C. C. Purja evaluated SNJ for Michigan's Disability Determination Service. (Tr. 172-74.) He noted that, on the day of the exam, SNJ's blood-sugar level was high: 290 mg/dL. (Tr. 172.) ("A normal sugar level is . . . less than 100 mg/dL when fasting and less than 140 mg/dL two hours after eating." WebMD, *Diabetes Health Center*, http://diabetes.webmd.com/how-sugar-affects-diabetes (last visited Jan. 16, 2013).) Dr. Purja noted that SNJ "should be in touch with the nurse at the diabetic clinic as [her] sugars go very high and her sugars are not well controlled"; he added, "[SNJ's] mother should stay in touch with them to monitor her sugars and get advice." (Tr. 174.)

The next month, September 2008, Dr. Muhammad Ahmed completed a "Childhood Disability Evaluation Form" for the Social Security Administration. (Tr. 175-80.) Based on a review of SNJ's medical file, Dr. Ahmed concluded that SNJ's diabetes was a severe impairment, but that the impairment did not "meet, medically equal, or functionally equal" a listed impairment. (Tr. 175.) In terms of functional equivalence, Dr. Ahmed found that SNJ had "[n]o [l]imitation" in five of the six functional domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for yourself. (Tr. 177-78.) In the sixth domain, health and physical well-being, Dr. Ahmed found that SNJ had a "[l]ess [t]han [m]arked" limitation. (Tr. 178.)

On September 16, 2008, SNJ had a hypoglycemic episode and went to the emergency room via ambulance. (Tr. 183-184.) Subsequent office-visit notes provide that SNJ had suffered from a "prolonged morning seizure." (Tr. 188.) Plaintiff was given a food tray, a glucagon injection, and

4

discharged in stable condition. (Tr. 187, 188.)

It appears that SNJ did not suffer from any severe hypoglycemic episodes during the following year. (*See* Tr. 188.) In fact, the next medical record in the administrative file is dated January 11, 2010. (Tr. 188.) On that day, SNJ, then eight years old, saw Dr. Bassem Dekelbab for the first time. (*Id.*) Dr. Dekelbab noted that SNJ was performing at an "average" level in her third-grade class. (*Id.*) On the day of the exam, SNJ's blood sugar was high: greater than 500 mg/dL. (Tr. 189.) SNJ reported that she had not taken her insulin at breakfast. (Tr. 189.) Dr. Dekelbab discussed with Plaintiff that SNJ's hemoglobin A1c reading indicated poor control and indicated that SNJ's "average blood sugar for the last few weeks ha[d] been more than 350 [mg/dL]." (*Id.*) Dr. Dekelbab also stated that the A1c reading was "certainly indicative of being under insulinized." (*Id.*) Dr. Dekelbab discussed with Plaintiff that, at SNJ's age, SNJ's cognitive and developmental ability was not sufficient for SNJ to be independent. (Tr. 189.) Dr. Dekalbab provided that SNJ should be expected to do only one shot per day (with supervision) and that her remaining shots should be administered by an adult. (*Id.*)

The administrative record also contains a "Diabetic Student Insulin Log" ("Insulin Log") and a "Parent Contact Log" ("Parent Log"). The Insulin Log reflects that, during the 2009-10 school year, SNJ's blood-sugar levels were often above 400 mg/dL and, on several occasions, above 500 mg/dL. (Tr. 132, 134, 136, 138.) The Parent Log from the 2009-10 school year reflects 23 occasions where the school contacted Plaintiff about her daughter's high blood-sugar readings. (Tr. 140-42.)

Beginning on July 21, 2010, SNJ was hospitalized for six days. (Tr. 190-219.) Because the ALJ issued his decision on July 22, 2010, however, these records were not part of the record before

5

the ALJ. (*See* Tr. 30.) Although the records were submitted to the Social Security Administration's Appeals Council, the Appeals Council denied Plaintiff's request for review. (Tr. 7.) As such, the Court cannot consider the July 2010 medical records in deciding whether to affirm, reverse, or remand the ALJ's decision pursuant to sentence four of 42 U.S.C. § 405(g). *Elliott v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002) ("If the Appeals Council declines to review an ALJ's decision, federal courts cannot consider evidence not presented to the ALJ."); *Frazier v. Comm'r of Soc. Sec.*, No. 10-15120, 2012 WL 760799, at *1 n.1 (E.D. Mich. Feb. 9, 2012) *report and recommendation adopted*, 2012 WL 760805 (E.D. Mich. Mar. 8, 2012) ("In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those 'AC' exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review." (citing *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996))).

### C. Testimony at the Hearing Before the ALJ

At the hearing before ALJ Berk, Plaintiff testified about SNJ's diabetes-related symptoms. She stated that SNJ's blood-sugar numbers had recently been "really, really high or really, really low." (Tr. 37.) Plaintiff also testified that SNJ had recently experienced "shivers" and "shakes," but that those symptoms did not "really interfere with her . . . activities at school." (*Id.*) Plaintiff said that SNJ had "experienced seizures, [and] one episode of diabetic coma for roughly about an hour or so." (Tr. 37.) Plaintiff also reported that because of SNJ's diabetes, SNJ had nightly bed-wetting and had to wear protection to school every day. (Tr. 41-42.) SNJ's mother testified that SNJ's "main thing" was that she got tired and that SNJ would use a cot in the school office to lie

down. (Tr. 43.) Plaintiff explained that while SNJ had to lie down a lot, "she still does her homework. It doesn't interfere with her getting her school work done, but on occasion she has to go in the office and do her work." (Tr. 43.)

A medical expert, Dr. Sarah Clune, also testified at the administrative hearing. Prior to the hearing, Dr. Clune had reviewed SNJ's medical record; she was also present during Plaintiff's testimony. (Tr. 44-45.) Dr. Clune testified that SNJ's type 1 diabetes did not meet or medically equal any listed impairment. (Tr. 45.) Regarding functional equivalence, Dr. Clune testified that SNJ had no limitations in the following five functional domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, and caring for yourself. (Tr. 46.) In the sixth domain, health and physical well-being, Dr. Clune opined that SNJ had a "less than marked" limitation. (*Id.*)

## II. CHILD DISABILITY FRAMEWORK AND THE ALJ'S FINDINGS

A child under age eighteen is considered "disabled" within the meaning of the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). The Social Security regulations set forth a sequential three-step process for determining children's disability claims: first, the child must not be engaged in "substantial gainful activity"; second, the child must have a "severe" impairment; and third, the severe impairment must meet, medically equal, or functionally equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *See* 20 C.F.R. § 416.924.

To "meet" a listed impairment, a child must demonstrate both "A" and "B" criteria of the

impairment. *See* 20 C.F.R. pt. 404, subpt. P, app. 1. "Paragraph A of the listings is a composite of medical findings which are used to substantiate the existence of a disorder" whereas the "purpose of the paragraph B criteria is to describe impairment-related functional limitations which are applicable to children." *Id.* To be found disabled based on meeting a listed impairment, the claimant must exhibit all the elements of the Listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003).

If a child's impairment(s) do not "meet" a listed impairment, the impairment(s) may still be medically or functionally equal in severity and duration to the medical criteria of a listed impairment. *See* 20 C.F.R. §§ 416.926, 416.926a; *Vansickle v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 727, 729 (E.D. Mich. 2003) ("Medical equivalency is covered by 20 C.F.R. § 416.926; functional equivalency is covered by Section 416.926a."). "To determine medical equivalence, the Commissioner compares the symptoms, signs, and laboratory findings concerning the alleged impairment with the medical criteria of the listed impairment." *Walls v. Comm'r of Soc. Sec.*, No. 1:08CV254, 2009 WL 1741375, at *8 (S.D. Ohio June 18, 2009) (citing 20 C.F.R. § 416.926(a)). A claimant can demonstrate medical equivalence in any of three ways:

> (1) by demonstrating an impairment contained in the Listings, but which does not exhibit one or more of the findings specified in the particular listing, or exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing, if the claimant has other findings related to his impairment that are at least of equal medical significance to the required criteria;
>
> (2) by demonstrating an impairment not contained in the Listings, but with findings at least of equal medical significance to those of some closely analogous listed impairment; or
>
> (3) by demonstrating a combination of impairments, no one of which meets a Listing, but which in combination produce findings at least of equal medical significance to those of a listed impairment.

*Koepp v. Astrue*, No. 10-C-1002, 2011 WL 3021466, at *10 (E.D. Wis. July 22, 2011) (citing 20 C.F.R. § 404.1526(b)); *see also* 20 C.F.R. § 416.926. "The essence of these subsections is that strict conformity with the Listing Requirements is not necessarily required for a finding of disability." *Emeonye v. Astrue*, No. 04-03386, 2008 WL 1990822, at *4 (N.D. Cal. May 5, 2008). Thus, "[i]f a plaintiff is only able to demonstrate most of the requirements for a Listing or if he or she is able to demonstrate analogous or similar impairments to the impairments of a Listing, the plaintiff may nonetheless still satisfy the standards if the plaintiff can show impairments of equal medical significance." *Id.*

To determine functional equivalence, an ALJ is to evaluate six "domains" of functioning: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a. Functional equivalence to a listed impairment exists when the child has an "extreme" limitation in one, or "marked" limitations in two of the six domains. *See* 20 C.F.R. § 416.926a(d). A "marked" limitation results if the child's impairment(s) interferes "seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id.* An "extreme" limitation exists when a child's impairment(s) interferes "very seriously" with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An extreme limitation is the equivalent of the functioning expected to be found on standardized testing with scores that are at least three standard deviations below the mean. 20 C.F.R. § 416.926a(e)(3).

Applying this framework, ALJ Berk concluded that SNJ had the following severe impairment: "diabetes mellitus, type I." (Tr. 20.) He next found that SNJ's impairment did not meet or medically equal a listed impairment. (Tr. 20.) Turning to functional equivalence, the ALJ concluded that SNJ had (1) "no limitation in acquiring and using information," (2) "no limitation in attending and completing tasks," (3) "no limitation in interacting and relating with others," (4) "no limitation in moving about and manipulating objects," (5) "no limitation in the ability to care for herself," and (6) "less than marked limitation in health and physical well-being." (Tr. 23-29.) Accordingly, the ALJ concluded that SNJ had not been disabled since June 25, 2008, the date Plaintiff filed the SSI application on SNJ's behalf. (Tr. 30.)

## III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th

10

Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. ANALYSIS

Plaintiff's primary, and arguably her sole, argument is that the ALJ erred in assessing her credibility. The claim of error is largely procedural: "Because the ALJ did not specifically set forth his finding as to the credibility of S.N.J.'s mother, the Court must remand to the Commissioner to set forth a proper credibility determination." (Dkt. 10, Pl.'s Mot. Summ. J. at 8; *see also* Dkt. 15, Pl.'s Reply to Def.'s Mot. Summ. J. at 14.) While the ALJ could have provided a more thorough credibility assessment, as explained below, his narrative was sufficient in this regard.

A court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's

11

demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). An ALJ, however, must not reject a claimant's (or here, a claimant's mother's) "statements about the intensity and persistence of [her] pain or other symptoms or about the effect [her] symptoms have on [her] ability to work solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(c)(2); *see also* S.S.R. 96-7p, 1996 WL 374186. In fact, the regulations provide a non-exhaustive list of other considerations that should inform an ALJ's credibility assessment: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant received for relief of pain or other symptoms; (6) any measures the claimant used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). Although an ALJ need not explicitly discuss every factor, *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005), an ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight," S.S.R. 96-7p, 1996 WL 374186 at *2.

As noted, it is this last point that Plaintiff stresses. And her argument has some merit. The ALJ's credibility analysis could have been better stated. In particular, Plaintiff correctly points out that the ALJ did not explicitly discuss how the Insulin Log, showing that SNJ's blood-sugar levels were frequently above 400 and 500 mg/dL, and the Parent Log, showing that SNJ's school often

12

contacted Plaintiff about her daughter's readings, failed to support Plaintiff's testimony about SNJ's diabetes-related symptoms and limitations. (*See* Pl.'s Mot. Summ. J. at 9; Pl.'s Reply to Def.'s Mot. Summ. J. at 5.)

Nonetheless, the Court believes that Plaintiff has not demonstrated reversible error. The ALJ gave several reasons for discounting her testimony and those reasons are supported by substantial evidence. For one, the ALJ stated that "[a]lthough [SNJ's] mother testified [that SNJ] is frequently tired at school and will lie down in the office, there is no evidence that this has negatively impacted her ability to acquire and use information." (Tr. 24.) The ALJ reasonably supported this claim by pointing out that Dr. Dekelbab noted that SNJ was performing at the "average" level in third grade. (*Id.*) The Court adds that Plaintiff herself testified that SNJ's need to lie down in the office did not "interfere with her getting her school work done." (Tr. 43.) Second, the ALJ discounted Plaintiff's credibility by noting that, contrary to a "Disability Report" where Plaintiff indicated that SNJ had experienced memory loss and blurred vision, SNJ's treatment records did not reflect memory loss or blurred vision. (Tr. 24, 29.) The ALJ's finding is reasonable in view of the medical evidence of record.

Third, and particularly responsive to Plaintiff's claim that her statements justify greater limitations in the six functional domains (*see* Pl.'s Reply to Def.'s Mot. Summ. J. at 6), the ALJ implicitly attacked Plaintiff's credibility. In particular, the ALJ gave Dr. Ahmed's and Dr. Clune's opinions "great weight." (Tr. 23.) He then, in rating each functional domain, relied on Dr. Ahmed's and Dr. Clune's functional domain ratings. (Tr. 24-29.) Therefore, to the extent that Plaintiff maintains that her testimony warrants greater functional domain limitations than those found by the ALJ or Drs. Ahmed and Clune, the ALJ provided a clear, implicit attack on her credibility. And

substantial evidence supports this implicit attack: as the ALJ found, both physicians reviewed the record, both physicians made the same findings, and, arguably at least, their findings were consistent with the medical evidence. (*See* Tr. 23.)

Given the foregoing, the Court believes that Plaintiff has not shown that the ALJ reversibly erred in assessing her credibility.

Although not explicitly asserting reversible error, Plaintiff briefly argues that the ALJ did not specify the weight he gave Dr. Clune's opinion. (Pl.'s Mot. Summ. J. at 9.) The argument is based on a mistaken premise; the ALJ in fact stated, "The opinion of medical expert Dr. Clune is . . . given great weight." (Tr. 23.) The ALJ also explained why he assigned Dr. Clune's testimony that weight: "Her opinion is consistent with the objective medical evidence of record and with the opinion of reviewing physician Dr. Ahmed. Additionally, there are no contradictory opinions in the record." (Tr. 23.) As already noted, the Court believes that substantial evidence supports these conclusions. Moreover, Dr. Clune was not a treating source, and the ALJ therefore had no heightened articulation requirement as to her opinion. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[E]ven if the purpose of the reasons-giving requirement in § 404.1527(d)(2) applies to the entire regulation, the SSA requires ALJs to give reasons for only *treating* sources.").

## V.  CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that the ALJ adequately explained his assessment of Plaintiff's credibility and that Plaintiff has not otherwise demonstrated reversible error. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 10) be DENIED, that Defendant's Motion for Summary Judgment (Dkt. 13) be GRANTED,

and that, pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be AFFIRMED.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: January 18, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on January 18, 2013.

s/Jane Johnson  
Deputy Clerk